LAWRENCE R. AND HELEN F. MATTO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matto v. Commissioner
Docket No. 12760-85.
United States Tax Court
T.C. Memo 1988-53; 1988 Tax Ct. Memo LEXIS 53; 55 T.C.M. (CCH) 99; T.C.M. (RIA) 88053; February 18, 1988. Lawrence R. Matto, pro se. Joseph F. Long, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies *54 in petitioners' income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
sec. 6651(a)(1) [1]
sec. 6653(a)(1)
sec. 6653(a)(2)
1981
$ 11,926
$ 1,789
$829
*
1982
$  7,463
--
$373
*
After concessions by both parties, the matters remaining for our consideration are whether petitioners are liable for the additions to tax and whether damages should be awarded to the United States pursuant to section 6673. FINDINGS OF FACT Some of the facts and attached exhibits are incorporated herein by this reference. Petitioners were residents of Huntington, Connecticut at the time they filed their petition. The underlying facts of this case are relatively simple. Petitioners claimed deductions for charitable contributions for the years 1981 and 1982 in the amounts of $ 29,081 and $ 27,740, respectively. Petitioners claimed these deductions as amounts *55 contributed to the Universal Life Church ("ULC"). Prior to trial, petitioners conceded that they were not entitled to any deductions for contributions to the ULC. Nevertheless, we set forth our findings of fact regarding petitioners' involvement with the ULC insofar as they are relevant to our discussion of the additions to tax and damages. Petitioners initially became involved in the ULC in 1979. Prior to that, petitioners had been members of the Huntington Congregational Church. The minister of that church had been asked to leave because of his charismatic religious views. Petitioners were also asked to leave because they had supported the minister. Petitioner-husband ("petitioner") established a local chapter of the ULC by Articles of Association dated August 15, 1979. He obtained a tax exemption permit was subsequently revoked in May 1980. Petitioner established a checking account and a variable rate fund in the name of the ULC, over which he had signature authority. During the years in issue, petitioner made contributions to the ULC by depositing amounts from his personal checking account into the two ULC accounts he maintained. The record establishes that during *56 the years in issue petitioner's chapter of the ULC donated items of clothing and Bibles and made monetary contributions to various charitable organizations, including amounts for the sponsorship of underprivileged children in foreign countries. Petitioner also performed marriages on three occasions. There is no evidence in the record to indicate that petitioner paid any personal expenses from the ULC accounts during the years in issue. In separate notices of deficiency, respondent disallowed petitioners' ULC contributions for previous years. Petitioners have twice before filed petitions with this Court with respect to the disallowed contributions, both times conceding the deficiencies and additions to tax prior to trial. In prior years, petitioner frequently used funds from the ULC account to pay his personal expenses. At trial petitioner admitted that his tax return for 1981 was filed late. Petitioner testified that he has always prepared his own return and has a history of timely filing. Petitioner stated that in 1982 he "waited until the last minute" to prepare his return for the 1981 year. he discovered that he was unfamiliar with the proper procedures necessitated *57 by the fact that the year had been unusually profitable and by his involvement in a consulting activity. Petitioner testified that on April 15, he contacted a certified public accountant who agreed to prepare petitioner's tax return but informed petitioner that it would not be timely filed. Petitioner requested an extension of time for filing by mailing the appropriate form within a few days after April 15. That form, however, is not in the record. Petitioner's 1981 return was received by the service center on June 29, 1982. OPINION Section 6651(a)(1) imposes an addition to tax for failure to file a required return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." To avoid the addition to tax, the taxpayer must prove both (1) that the failure to file was due to "reasonable cause," and (2) that the failure did not result from "willful neglect." . The burden of proof with respect to this matter falls upon petitioner. ; Rule 142(a). For purposes of section 6651(a) "reasonable cause" has been defined *58 as the exercise of "ordinary business care and prudence." Sec. 301.6651(c)(1), proced. & Admin. Regs. Petitioner asserts, and we agree, that he has shown that his failure to file timely was not due to willful neglect. However, petitioner must also show that the late filing was due to reasonable cause. Petitioner admitted that he waited until the last minute to prepare his return whereupon he discovered that he would need professional assistance. We cannot conclude that waiting until the eleventh hour constitutes the exercise of ordinary business care and prudence. Accordingly, petitioners are liable for the addition to tax for late filing in 1981. If any part of the underpayment of tax is due to negligence or intentional disregard of the rules or regulations, sections 6653(a)(1) and 6653(a)(2) impose an addition to tax equal to 5 percent of the underpayment and 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Petitioners bear the burden of proof with respect to this use. . Petitioner introduced evidence which established that this *59 is not the typical ULC case. For example, petitioner's ULC chapter made contributions to charitable organizations and petitioner did not use the ULC account to pay his personal expenses. Nevertheless, we must conclude that it was not reasonable for petitioner to think he could deduct amounts he deposited into an account over which he retained complete control. See , (1986). Accordingly, petitioner is liable for the additions to tax for negligence. Finally, we consider respondent's request for damages under section 6673 for the reason that petitioner instituted and maintained this action primarily for delay and that his position is frivolous and groundless. This case differs from most ULC cases in material respects. Unlike the vast majority of taxpayers in cases of this nature, petitioner introduced into evidence the organizational documents of his ULC chapter as well as receipts and letters establishing its charitable activities. Additionally, we note the complete lack of evidence indicating petitioner paid his personal expenses with funds from the ULC account. Although the deductions were, nevertheless, not allowable, *60 and we concluded it was negligent of petitioner to think otherwise, we are not prepared to conclude that petitioner's position in this proceeding merits the imposition of damages. The facts here are distinguishable from the earlier cases in which petitioner initially claimed ULC contributions before conceding the issue. Petitioner though that since he had "kept everything clean" and did not mix up his personal account with the church account and could show a clear record of charitable contributions from the church, his deductions would be allowable. Prior to trial, he concluded that despite his efforts the deductions still were not proper and conceded the issue. It has been petitioner's claim, and we are persuaded, that he maintained this action solely to contest the additions to tax for negligence and late filing. Under these circumstances, we cannot conclude that petitioner's position was frivolous or groundless. Accordingly, we decline to impose damages. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and procedure. ↩
*. 50 percent of the interest due on the underpayment. ↩